In the United States District Court
For the Middle District of Pennsylvania
Williamsport Division

| | |
|---|---|
| LaMarr Pirkle, Theodore Dannerth, Lauren Danks, and Casey Flynn, <br> *Plaintiffs,* <br> *v.* <br> Governor Thomas W. Wolf, in his official capacity, Kathryn Boockvar, secretary of the Commonwealth of Pennsylvania, in her official capacity, <br> *Defendants* | Case No.: <br><br> **Verified Complaint for Declaratory and Injunctive Relief** |

## Verified Complaint for Declaratory and Injunctive Relief

Plaintiffs LaMarr Pirkle, Theodore Dannerth, Lauren Danks, and Casey Flynn (collectively "Voters") complain as follows:

### Introduction

1.    This is a civil action for declaratory and injunctive relief concerning violations of Voters' voting and equal-protection rights by election officials' inclusion of illegal Presidential Elector results in certain counties, which inclusion unlawfully dilutes Voters' lawful votes and requires invalidation of those presidential-election results in counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3, 2020 presidential election in this state.

1

2. Voters seek a remedy excluding presidential-election results from such counties in the certification activities for Presidential Electors described in 3 U.S.C. § 6:

It shall be the duty of the executive of each State, as soon as practicable after the conclusion of the appointment of the electors in such State by the final ascertainment, under and in pursuance of the laws of such State providing for such ascertainment, to communicate by registered mail under the seal of the State to the Archivist of the United States a certificate of such ascertainment of the electors appointed, setting forth the names of such electors and the canvass or other ascertainment under the laws of such State of the number of votes given or cast for each person for whose appointment any and all votes have been given or cast; and it shall also thereupon be the duty of the executive of each State to deliver to the electors of such State, on or before the day on which they are required by section 7 of this title to meet, six duplicate-originals of the same certificate under the seal of the State; and if there shall have been any final determination in a State in the manner provided for by law of a controversy or contest concerning the appointment of all or any of the electors of such State, it shall be the duty of the executive of such State, as soon as practicable after such determination, to communicate under the seal of the State to the Archivist of the United States a certificate of such determination in form and manner as the same shall have been made; and the certificate or certificates so received by the Archivist of the United States shall be preserved by him for one year and shall be a part of the public records of his office and shall be open to public inspection; and the Archivist of the United States at the first meeting of Congress thereafter shall transmit to the two Houses of Congress copies in full of each and every such certificate so received at the National Archives and Records Administration.

**Jurisdiction and Venue**

3. This action arises under 42 U.S.C. § 1983 and the First and Fourteenth

Amendments to the U.S. Constitution.

4.       This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a), 2201, and 2202.

5.       Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred or will occur in this District.

## Parties

6.       All Plaintiffs are eligible registered voters in this State and were qualified to, and did, vote for a presidential candidate in the November 3, 2020 presidential election in this State.

7.       Plaintiff LaMarr Pirkle is a retired pastor who resides in Centre County.

8.       Plaintiff Theodore Dannerth is a farmer who resides in Centre County.

9.       Plaintiff Lauren Danks has been a nurse anesthetist for 13 years and resides in Centre County.

10.      Plaintiff Casey Flynn is a corrections officer who resides in Montour County.

11.      All Defendants are persons authorized by federal and state law to be involved in the process of certifying Presidential Electors as described in 3 U.S.C. § 6.

12.      Defendant Governor Thomas W. Wolf, sued in his official capacity, is

required as the state "executive" to finalize, execute, and send required certificates for Presidential Electors under 3 U.S.C. § 6.

13.     Defendant, Kathryn Boockvar, sued in her official capacity, is the Secretary of the Commonwealth of Pennsylvania. Under 25 P.S. § 3159, Boockvar is responsible for tabulating, computing, and canvassing all ballots cast in any primary and general election and for certifying and filing the tabulation of all votes. Under 25 P.S. § 3166, Boockvar is responsible for receiving and tabulating the returns of the election of the presidential elections and for delivering those results to the Governor for review and certification.

### Facts

14.     The state certification of Presidential Electors prescribed in 3 U.S.C. § 6, will occur this year by December 8, and the Electoral College votes on December 14. Voters seek a decision from this Court well before then to allow for possible appeal as necessary, as set out in a separate motion for expedited consideration.

15. Accordingly, Defendants must certify the results of the election of Presidential Electors by December 8, 2020.

### *Presidential-Election Results in Key Counties*

16.     The current Presidential election results count 3,362,873 ballots cast for

4

Joe Biden and 3,317,943 ballots cast for Donald Trump, a difference of 44,930 ballots. *2020 Presidential Election*, Department of State, https://www.election returns.pa.gov/General/SummaryResults (last visited Nov. 9, 2020). In Philadelphia county, 570,708 ballots were cast for Joe Biden and 127,813 ballots were cast for Donald Trump, a difference of 442,895 ballots. *2020 Presidential Election: Philadelphia*, Department of State, https://www.electionreturns.pa.gov/ General/CountyResults?countyName=Philadelphia&ElectionID=83&Election Type=G&IsActive=1 (last visited Nov. 9, 2020). In Montgomery county, 313,543 ballots were cast for Joe Biden and 182,907 ballots were cast for Donald Trump, a difference of 130,636 ballots. *2020 Presidential Election: Montgomery,* Department of State, https://www.electionreturns.pa.gov/General/CountyResults ?countyName=Montgomery&ElectionID=83&ElectionType=G&IsActive=1 (last visited Nov. 9, 2020). In Delaware county, 200,911 ballots were cast for Joe Biden and 116,216 ballots were cast for Donald Trump, a difference of 84,695 ballots. *2020 Presidential Election: Delaware,* Department of State, https://www.election returns.pa.gov/General/CountyResults?countyName=Delaware&ElectionID=83&E lectionType=G&IsActive=1 (last visited Nov. 9, 2020). And in Allegheny county, 415,861 ballots were cast for Joe Biden and 274,348 ballots were cast for Donald Trump, a difference of 141,513 ballots. *2020 Presidential Election: Allegheny*,

5

Department of State, https://www.electionreturns.pa.gov/General/CountyResults?
countyName=Allegheny&ElectionID=83&ElectionType=G&IsActive=1 (last
visited Nov. 9, 2020).

***Sufficient Evidence Exists to Place in Doubt Presidential-Election Results in Key
Counties***

17.    There exists sufficient evidence to place in doubt the November 3
presidential-election results in identified key counties. Some of that evidence
follows.

18.    In Philadelphia county, some voters were advised they needed to cure
ballot defects while others were not. (Trump Compl., attached as Ex. 1, at ¶¶ 133-
34, 136.) Poll watchers were excluded from access to canvassing locations. (*Id.* at
¶¶ 142, 145.)

19.    In Montgomery county, a poll watcher overheard unregistered voters
being advised to return later to vote under a different name that was registered in
the poll book. (*Id.* at ¶ 117.) Voter turnout was 88.5%, 19% higher than statewide
turnout of 69.3%. *See 2020 Voter Registration Statistics – Official*, Department of
State, https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Voting
ElectionStatistics/Documents/2020%20Primary%20VR%20Stats%20%FINAL.
pdf (last visited Nov. 10, 2020) (showing 574,403 registered voters in Montgomery

6

County); *Unofficial Election Results,* Montgomery County, Pennsylvania,

https://electionresults-montcopa.hub.arcgis.com/ (last visited Nov. 10, 2020)

(showing 508,442 ballots received in Montgomery County); 2020 *turnout is on*

*pace to break century-old records*, The Washington Post,

https://www.washingtonpost.com/graphics/2020/elections/voter-turnout/ (last

visited Nov. 10, 2020) (showing a 69.3% voter turnout statewide).

20.     In Delaware county, voters that were recorded to have received mail-in

ballots were given regular ballots and not required to sign the registration book.

(*Id.* at ¶ 125.) Poll watchers were granted extremely restricted access to a back

room counting area. (*Id.* at ¶ 143.) And ballots received on Election Day were not

separated from ballots received after 8 p.m. that day. (*Id.* at ¶ 151.) Voter turnout

was 75.87%, compared to statewide turnout of 69.3%. *General Election Unofficial*

*Results,* Delaware County, Pennsylvania, https://election.co.delaware.pa.us

/eb/November_2020/index.html (last visited Nov. 10, 2020).

21.     In Allegheny county, voters were required to vote provisionally

because the records indicated they had requested to vote by mail when they had

not. (*Id.* at ¶ 116.) Poll workers were reported to be close enough to voters so as to

observe the actual vote. (*Id.* at ¶ 120.) Voter turnout was 74.54%, compared to

statewide turnout of 69.3%. *Unofficial Results,* Allegheny County, PA,

https://results.enr.clarityelections.com/PA/Allegheny/106267/web.264614/#/summary (last visited Nov. 10, 2020).

22.     Throughout the state, voters received mail-in ballots without applying for them, in some cases receiving more than one. (*Id.* at ¶ 111.)

23.     Throughout the state, in-person voters were advised they must vote provisionally because they had asked for and received a mail-in ballot, when no such request was made. (*Id.* at ¶ 112.) In some cases, they were outright denied the right to vote. (*Id.* at ¶ 113.)

24.     It is estimated that over 680,000 ballots were processed without observation in Allegheny and Philadelphia counties. (*Id.* at ¶ 148.)

25.     This verified evidence, and the other verified evidence detailed in Trump Complaint, (*id.* at ¶¶ 51-61, 107-152), suffices to place in doubt the November 3 presidential-election results in identified counties and/or the state as a whole.

***Further Evidence To Be Provided From Relevant Records***

26.      In addition to the foregoing evidence, Voters will provide evidence, upon information and belief, that sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results. This will be in the form of expert reports based on data analysis comparing state

8

mail-in/absentee, provisional, and poll-book records with state voter-registration databases,[1] United States Postal Service ("USPS") records, Social Security records, criminal-justice records, department-of-motor-vehicle records, and other governmental and commercial sources by using sophisticated and groundbreaking programs to determine the extent of illegal voters and illegal votes, including double votes, votes by ineligible voters, votes by phantom (fictitious) voters, felon votes (where illegal), non-citizen votes, illegal ballot harvesting, and pattern recognition to identify broader underlying subversion of the election results. Plaintiffs have persons with such expertise and data-analysis software already in place who have begun preliminary analysis of available data to which final data, such as the official poll list, will be added and reports generated.

27.     Upon information and belief, the expert report will identify persons who cast votes illegally by casting multiple ballots, were deceased, had moved, or were otherwise not qualified to vote in the November 3 presidential election, along with evidence of illegal ballot stuffing, ballot harvesting, and other illegal voting. This evidence will be shortly forthcoming when the relevant official documents are final and available, for which discovery may be required, and the result of the analysis and expert reports based thereon will show that sufficient illegal ballots

_____

[1] This includes lists of voters using a Federal Postcard Application to register and

were included in the results to change or place in doubt the November 3 presidential-election results.

## Claims

## Count I

## Certifying Presidential Electors Without Excluding Certain Counties Would Violate Voters' Fundamental Right to Vote by Vote-Dilution Disenfranchisement.

### (42 U.S.C. § 1983; U.S. Const. amends. 1 and 14)

28.     Plaintiffs re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

29.     Certifying Presidential Electors without excluding certain counties would violate voters' fundamental right to vote by vote-dilution disenfranchisement.

30.     The counties at issue are those identified in the Facts where sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results.

31.     The right to vote, with the included right to have one's vote counted, is protected by the First and Fourteenth Amendments and is fundamental, *Harper v.*

---

vote, and any reports documenting voters contacted to cure rejected ballots.

*Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966), and well-established:

"Undeniably the Constitution of the United States protects the right of all qualified

citizens to vote, in state as well as in federal elections" and to have that vote

counted, *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

32.     "The right to vote can neither be denied outright, nor destroyed by

alteration of ballots, nor diluted by ballot-box stuffing." *Id.* at 555 (internal

citations omitted). "And the right of suffrage can be denied by a debasement or

dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting

the free exercise of the franchise." *Id.*

33.     If Defendants certify presidential-election results from counties where

sufficient illegal ballots were included in the results to change or place in doubt the

November 3 presidential-election result, Voters valid, legal votes will be

unconstitutionally diluted by illegal votes.

34.   As recognized in *Donald J. Trump for President v. Bullock*, 2020 WL

5810556 (D. Mont. Sept. 30, 20200, individual voters have standing to bring a

vote-dilution disenfranchisement claim, *id.* at *7 & n.4. "[T]he Supreme Court has

repeatedly enumerated the principle that claims alleging a violation of the right to

vote can constitute an injury in fact despite the widespread reach of the conduct at

issue." *Id.* at 7. *See also Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) ("[A]

person's right to vote is 'individual and personal in nature,'" so "'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage" (citations omitted)). Under the generalized-grievance formulations in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), this claim is not a generalized grievance. *Lujan* said it turns on whether a plaintiff (i) is merely asserting "citizen" standing, i.e., the same claim that could be asserted by "every citizen," and (ii) just trying to make the government do its job. *Id.* at 560-61. Voters don't bring their claims under mere "citizen" standing but rather assert personal harms from the violation of their own fundamental right to vote. Their claim is particularized, challenging only what violates their rights. Their harm is not the same as for every "citizen." "[D]enying standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *United States v. SCRAP*, 412 U.S. 660, 686-68 (1973); *see also, FEC v. Akins*, 524 U.S. 11, 24 (1998). Voters' harm is four levels more specific than "every citizen['s]" for their claim: (1) within "citizens" are those eligible to register as voters—only they have the potential to become registered voters; (2), within eligible voters are registered voters—only they have a right to vote; (3) within eligible, registered voters are those who actually voted—only they have a vote

subject to vote-dilution disenfranchisement; and (4) within these eligible, registered, voters who actually voted are those in a jurisdiction where there are counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3 presidential election. Those very specific voters with a very specific claim don't assert a generalized grievance, and they include Voters. Thus, Voters have standing.

35.    As established in the Facts discussion, existing and forthcoming evidence establish that in identified counties illegal voting has occurred in connection with the presidential-election results, which establishes that Voters' votes have been unconstitutionally diluted. So the presidential-election elections in those counties should be invalidated and not included in the certification of votes for selecting Presidential Electors.

36.    The relevant standard for invalidating election results from a particular jurisdiction generally is that "'the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result.'" 26 Am. Jur. 2d Elections § 389 (quoting *Gore v. Harris*, 772 So.2d 1234 (Fla. 2000), *rev'd on other grounds*, *Bush v. Gore*, 531 U.S. 98 (2000)). "Ordinarily, an election may be contested only for matters that would impeach the fairness of the result." *Id.* (citing *Duncan v. McMurray*, 249 S.W.2d 156 (Ky. 1952); *Appeal of Soucy*, 649

A.2d 60 (N.H. 1994); *Fielding v. South Carolina Election Com'n*, 408 S.E.2d 232 (S.C. 1991). "An election will not be invalidated unless the party contesting the election demonstrates an irregularity or illegality sufficient to change or place in doubt the result." *Id.* (citing *Middleton v. Smith*, 539 S.E.2d 163 (Ga. 2000)).

37.     In *Harris*, the Florida statute included as grounds for contesting an election "'Receipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election.'" 772 So.2d at 1250 (citation and emphasis omitted). *Harris* summarized the standard thus: "It is not enough to show a reasonable possibility that election results could have been altered by such irregularities, or inaccuracies, rather, a reasonable probability that the results of the election would have been changed must be shown." *Id.* at 1255.

38.     This generally recognized standard is reflected in this State's laws. In *In re Ctr. Twp. Democratic Party Supervisor Primary Election*, 4 Pa. D. & C.4th 555 (Pa. Com. Pl. 1989), a county trial court, applying 25 P.S. 3464, held that when "the electoral process has been undermined by fraudulent and perhaps criminal conduct, [the court's] duty to act is overwhelming, particularly where, as here, the fraud may have altered the outcome of the election," *id.* at 560-61, and invalidated a township election based on evidence of 15 fraudulently cast absentee ballots.  In *Bright's Contested Election,* 292 Pa. 389 (1928), the Pennsylvania

Supreme Court affirmed the order of a trial court which, finding massive fraud, intimidation, and illegal voting had occurred at one polling place, concluded that it could not determine which of the votes cast at that polling place were lawful and which were not, and threw out the entire ballot count. *Id.* The Supreme Court affirmed its authority "to throw out the entire poll of a district upon a proper showing." *Id.* at 394. *See also In re Ctr. Twp. Democratic Party Supervisor Primary Election*, 4 Pa. D. & C.4th at 560 ("The Supreme Court specifically held that when it is not possible to separate the lawful ballots from the unlawful or fraudulent ballots, then the entire vote must be rejected and thrown out); *Gollmar's Election, Case of*, 316 Pa. 560, 567, 175 A. 510, 513 (1934) ("There is no doubt that where such glaring fraud and illegality exists as to make it impossible to purge the ballot boxes with any degree of accuracy, the court may reject the whole vote of any or of several districts.").

39.    Regarding evidence for invalidating election results in a jurisdiction, *Harris* established that the required showing could be made (inter alia) by "credible statistical evidence" establishing a changed election outcome "by a preponderance of a reasonable probability," *id.*:

> In this case, there is no credible statistical evidence, and no other competent substantial evidence to establish by a preponderance of a reasonable probability that the results of the statewide election in the State of Florida would be different from the result which has been certified by

the State Elections Canvassing Commission.

40.     In addition to *states* routinely providing for invalidating election results, including in the Presidential Electors context, the U.S. Supreme Court *itself* in *Bush*, 531 U.S. 98, required that partial recounts in some counties (that unconstitutionally employed different and unclear standards for determining voter intent) be excluded from the final count in the Florida 2000 presidential election because of the constitutional flaws identified, *id.* at 107-12.

41.     The foregoing articulations of the standard for invalidating election results in a particular jurisdiction—including proof of reasonable probability by credible statistical evidence—should be applied here to determine whether the election results in certain counties should be excluded for purposes of certifying Presidential Electors. In some situations where election results are invalidated, a new election is ordered. *See, e.g.*, *Pabey v. Pastrick*, 816 N.E.2d 1138 (Ind. 2004). But with the Electoral College scheduled to be certified by December 8 and to meet and vote on December 14, 2020, there is insufficient time for a new election in the counties involved. Moreover, the Electoral College is unique and statutory provisions provide special procedures for moving the Electoral College vote along expeditiously since the presidency is at issue. So the proper remedy here is to exclude the results from jurisdictions meeting the standard for disqualifying

elections from the final results that are certified and reported for Presidential Electors.

42.     Because illegal votes dilute legal votes, the evidence establishes, and will establish, that the rights of Voters have been violated by vote-dilution disenfranchisement. Consequently, the presidential-election results from the counties identified should not be included in certified and reported totals for Presidential Electors from this state.

## Prayer for Relief

1.     Declare that the inclusion of illegal votes in identified counties violates Voters' right to vote under the First and Fourteenth Amendment by vote-dilution disenfranchisement.

2.     Declare that the proper remedy for this constitutional violation as applied to presidential-election results is to exclude presidential-election results from those counties for the Presidential Elector certification under 3 U.S.C. § 6 for this state.

3.     Under that remedy, declare that there is sufficient evidence that illegal votes were counted in the identified county or counties to change or place in doubt the results of the November 3, 2020 presidential election results in contested counties, so that the county's presidential-election results must be invalidated.

17

4.      Enjoin Defendants from preparing and conducting the certification activities for Presidential Electors described in 3 U.S.C. § 6 (and applicable state law implementing the federal provision) without excluding the presidential-election results from the identified counties.

5.      Award Voters their costs and attorneys fees under 42 U.S.C. § 1988 and any other applicable authority; and

6.      Grant any and all other such relief as this Court deems just and equitable.

Date: November 10, 2020

Respectfully Submitted,

*/s/ Walter S. Zimolong, Esq.*
Walter S. Zimolong III, Esq.
ZIMOLONG, LLC
wally@zimolonglaw.com
P.O. Box 552
Villanova, PA 19085-0552
Tele: (215) 665-0842

*Local Counsel for Plaintiffs*

James Bopp, Jr. (IN #2838-84)*
  jboppjr@aol.com
True the Vote, Inc.
  Validate the Vote Project
THE BOPP LAW FIRM, PC1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: 812/232-2434

Anita Y. Milanovich (MT #12176)*
  *Of Counsel*
  aymilanovich@milanovichlaw.com
MILANOVICH LAW, PLLC
100 E. Broadway Street
The Berkeley Room
Butte, MT 59701
Telephone: 406/589-6856

*Lead Counsel for Plaintiffs*
* Pro Hac Vice application forthcoming

19

**Verification**

I, LaMarr Pirkle, declare as follows:

1.  I am a resident of Pennsylvania.

2.  If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*.

3.  I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November 09, 2020.

# Verification

I, Theodore Dannerth, declare as follows:

1.   I am a resident of Pennsylvania.

2.   If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief.*

3.   I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November 10th, 2020.

## Verification

I, Lauren Danks, declare as follows:

1. I am a resident of Pennsylvania.

2. If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November _10_ , 2020.

# Verification

I, Casey Flynn, declare as follows:

**1.** I am a resident of Pennsylvania.

**2.** If called upon to testify, I would testify competently as to the matters set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*.

**3.** I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning me and my past and intended activities are true and correct to the best of my knowledge and understanding. 28 U.S.C. § 1746.

Executed on November ___, 2020.



_____