In the United States District Court
For the Middle District of Pennsylvania
Williamsport Division

| | |
|---|---|
| **LaMarr Pirkle, Theodore Dannerth, Lauren Danks,** and **Casey Flynn,**<br>*Plaintiffs,*<br><br>v.<br><br>**Governor Thomas W. Wolf**, in his official capacity, **Kathryn Boockvar,** secretary of the Commonwealth of Pennsylvania, in her official capacity,<br>*Defendants* | Case No.: **4:20-cv-02088-MWB**<br><br>**Reply in Support of<br>Motion to Consolidate and Expedite**<br><br>**Judge Brann** |

## Reply in Support of
## Motion to Consolidate and Expedite

In Defendants' opposition (ECF No. 8) to Plaintiffs' ("Voters") consolidation-expedition motion, Defendants fail to address the standards for expedition and consolidation. Instead they primarily argue that Voters lack standing. But that is the sort of argument that should be addressed in a dismissal motion. So Defendants have the cart before the horse. The schedule in the Trump Campaign case (which Voters ask the Court to adopt here) provides a time for filing a motion to dismiss, and Voters will address standing, alleged lack of a claim, and other such arguments more fully in response to a motion to dismiss. For now, Voters incorporate by reference their Complaint (ECF. No. 1), which states their claim and provides a pre-

1

liminary argument on standing, supplemented by a fuller argument on standing below.

Preliminarily though, the reason for consolidation is to aid this Court's efficient management of cases and to preserve judicial resources. By putting the cart before the horse, Defendants disrupt the proper, efficient flow of this litigation. And this case and the Trump Campaign case are closely related and should be consolidated, though they have unique features. As to delaying discovery, the very nature of this case precludes that. With time being of the essence, discovery must proceed parallel to motion practice.

**Voters Have Standing for Their Vote-Dilution Disenfranchisement Claim.**

Defendants allege that the Court lacks subject matter jurisdiction because Voters lack standing. (Defs. Resp., ECF 8, at 2-6.) They are incorrect.

As recognized in *Donald J. Trump for President v. Bullock*, 2020 WL 5810556 (D. Mont. Sept. 30, 2020), individual voters have standing to bring a vote-dilution disenfranchisement claim, *id.* at *7 & n.4. "[T]he Supreme Court has repeatedly enumerated the principle that claims alleging a violation of the right to vote can constitute an injury in fact despite the widespread reach of the conduct at issue." *Id.* at 7. *See also Orloski v. Davis*, 564 F. Supp. 526, 530 (W.D. Pa. 1983) (voter standing to challenge right-to-vote burden); *Pierce v. Allegheny County Bd. of*

*Elections*, 324 F. Supp. 2d 684, 693-93 (W.D. Pa. 2003) (voter standing to challenge right-to-vote burden).

Voters meet the standing requirements of (1) injury in fact, (2) traceability, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). These are summarized next, with further detail following.

First, regarding "injury in fact," *id.* at 560, protection for individual voting rights have been increasingly recognized for decades. *See, e.g.*, *Baker v. Carr*, 369 U.S. 186, (1962); *Gray v. Sanders*, 372 U.S. 186 (1963); *Reynolds v. Sims*, 377 U.S. 533 (1964); *Moore v. Ogilvie*, 394 U.S. 814 (1969). The fundamental right to vote is well-established: "[T]he Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections" and to have that vote counted. *Reynolds*, 377 U.S. at 554. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.* at 555. Voters already suffer the personal harm of dilution of their votes by the inclusion of illegal votes in counties identified in this case. Voters seek to stop the further vote-dilution disenfranchisement of having Presidential Electors in this state certified on the basis of presidential-election results in counties where sufficient illegal ballots were included in the results to change or place in doubt the results of

the November 3, 2020 presidential election in this state. Those are constitutionally recognized, particularized harms.

Second, regarding "traceability," *Lujan.* 504 U.S. at 560, Defendants are responsible for the Presidential Elector certification proceedings described in 3 U.S.C. § 6 (and implementing state law), so the vote-dilution disenfranchisement resulting from such certifying that includes presidential-election results from identified counties is fairly traceable to them.

Third, regarding "redressability," *id.* at 561, this vote-dilution disenfranchisement of Voters will be redressed by excluding from the presidential-election results on which Presidential Electors are certified those results from counties where sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3 presidential election in this state.

Voters' claim of vote-dilution disenfranchisement is not a generalized grievance under *Lujan*'s two formulations of that doctrine:

> [1] a plaintiff raising only a generally available grievance about government—claiming only harm to his and *every citizens*'s interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy,

*id.* at 560-61 (emphasis added), and

> [2] an injury amounting only to the alleged violation of a right to have the Government act in accordance with law [is] not judicially cognizable ... [and]

4

cannot alone satisfy the requirements of Art. III . . . ,"  *id.* at 575-76 (internal quotation marks and citation omitted). So there are two issues: (1) whether the claimant is just a *citizen* trying only to make the government do its job without more and (2) whether the claim the same claim held by "every citizen." Because the first issue is more specific, it is the core of the analysis. "[T]he proper inquiry is whether the plaintiffs sue solely as *citizens* who insist that the government follows the law." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 8 (Tex. 2011) (citing E. Chemerinsky, *Constitutional Law: Principles and Policies* 91 (3d ed. 2006)) (emphasis added). "[N]either *citizens* nor taxpayers can appear before a court simply to insist that the government and its officials adhere to the requirements of law." C.A. Wright et al., *Federal Practice & Procedure* § 3531.10 (3d ed. 2008) (emphasis added). Thus, mere "citizen" standing is the issue, and the present challenge is not a generalized grievance under the first or second question.

First, Voters don't bring their claims under mere "citizen" standing. Rather, they assert personal harms from the violation of their own fundamental right to vote that is protected by the First and Fourteenth Amendments and U.S. Const. art. I, § 4, cl. 1. Given the Supremacy Clause, U.S. Const. art. IV, para. 2, state officials must obey constitutional mandates. Voters' claims are also particularized.

They don't challenge anything not directly bearing on their claims, so they are not just trying to make the government do its job in some general way but rather challenge that which particularly violates their rights. So they are not mere citizens trying to make government do its job.

Second, Voters assert a harm that is not the same as for every "citizen." "The bar is based not on the number of people affected—a grievance is not generalized merely because it is suffered by large numbers of people." *Andrade*, 345 S.W.3d at 7 (citing Chemerinsky, *Constitutional Law* 91). "[D]enying standing to persons who are in fact injured simply because many others are also injured, would mean that the most injurious and widespread Government actions could be questioned by nobody." *United States v. SCRAP*, 412 U.S. 660, 686-68 (1973). "[W]here a harm is concrete, though widely shared, the Court has found injury in fact." *FEC v. Akins*, 524 U.S. 11, 24 (1998). Voters' harm is four levels more specific than "every citizen['s]" for their claim: (1) within "citizens" are those eligible to register as voters—only they have the potential to become registered voters; (2), within eligible voters are registered voters—only they have a right to vote; (3) within eligible, registered voters are those who actually voted—only they have a vote subject to vote-dilution disenfranchisement; and (4) within these eligible, registered, voters who actually voted are those in a jurisdiction where there are

counties with evidence that sufficient illegal ballots were included in the results to change or place in doubt the results of the November 3 presidential election. Those very specific voters with a very specific claim don't assert a generalized grievance, and they include Voters. Thus, Voters have standing.

So a court that fails to recognize voter standing for vote-dilution-disenfranchisement claims because they "are materially grounded on ostensible election fraud that may be conceivably raised *by any [state] voter*," *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2748301, at *4 (D. Nev. May 27, 2020) (emphasis in original), errs because *Lujan* based generality on *citizens*, not the more specific *voter*, and no *unqualified* voter could have a vote harm—the very issue here with illegal ballots. In fact, *Paher* actually noted that voters there "argue[d] that they did not merely assert 'citizen' standing, and that harm is specific to them as registered, eligible voters, who actually vote," *id.*, but instead of discounting that argument switched to the "even if" response that their claim of likely vote fraud from mail-in ballots was speculative, *id.* Here, the voting is not future but past, and the evidence is based on what has happened, not what was likely to happen, so the speculative answer is gone.[1]

---

[1] Nor are two other cases (sometimes cited) controlling or applicable, in large part because they involved no actual voting and no evidence of illegal voting having occurred. *ACRU v. Martinez-Rivera*, 166 F. Supp. 3d 779 (W.D. Tex. 2105), involved review of a magistrate's report and ACRU did not object to the

That such voters have standing is also apparent for two other reasons. First, an election is the key opportunity for "We the People," U.S. Const. pmbl., to exercise their constitutional sovereignty in this democratic Republic, so elections are precisely about voters exercising their rights and they must be able to challenge harms to those rights. Second, political parties are routinely permitted to assert the voting rights of their members in a representational capacity, but that depends *solely* on the fact that those voting members have standing. For example, *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), held that for representational standing an organization must "make specific allegations establishing that at least one identified member had suffered or would suffer harm" or that "*all* the members of the organization are affected by the challenged activity"), *id.* at 498-99. *Cf. Georgia Republican Party v. SEC*, 886 F.3d 1198, 1203-05 (11th Cir. 2018) (rejecting political party standing for not establishing that a member had standing). So individual voters necessarily have standing to challenge harms to their voting

---

magistrate's finding that "undermined voter confidence and potential vote dilution[] merely amount to generalized grievances about the government, which do not give rise to associational standing" and the court found no clear error. *Id.* at 787. But that was about whether failure to purge voting rolls might result in vote dilution. *United States v. Florida*, 2012 U.S. Dist. LEXIS 189624 (N.D. Fla. 2012), involved four potential intervenors claiming "that if people are improperly registered to vote it will dilute the votes of properly registered voters," *id.* at *4, and they were held to have only the generalized interest of "every other registered voter in the state," *id.* Again, no voting had occurred with evidence.

rights.

## Conclusion

Voters' motion to consolidate and expedite their case should be granted.

Date: November 12, 2020

        Respectfully Submitted,
        */s/ Walter S. Zimolong, Esq.*
        Walter S. Zimolong III, Esq.
        ZIMOLONG, LLC
        wally@zimolonglaw.com
        P.O. Box 552
        Villanova, PA 19085-0552
        Tele: (215) 665-0842
        *Local Counsel for Plaintiffs*

        James Bopp, Jr. (IN #2838-84)*
         jboppjr@aol.com
        True the Vote, Inc.
         Validate the Vote Project
        THE BOPP LAW FIRM, PC1 South Sixth St.
        Terre Haute, IN 47807-3510
        Telephone: 812/232-2434

        Anita Y. Milanovich (MT #12176)*
         *Of Counsel*
        aymilanovich@milanovichlaw.com
        MILANOVICH LAW, PLLC
        100 E. Broadway Street
        The Berkeley Room
        Butte, MT 59701
        Telephone: 406/589-6856

        *Lead Counsel for Plaintiffs*
        * *Pro Hac Vice application pending*

## Certificate of Service

I hereby certify that on November 12, 2020, I caused the foregoing Reply to be filed with the United States District Court for the Middle District of Pennyslvania, Williamsport Division, via the Court's CM/ECF system, which served all counsel of record.

/s/ Walter S. Zimolong III, Esq.
Walter S. Zimolong III, Esq.
*Local Counsel for Plaintiffs*
